IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Antonio Martinelle Randolph, #19394-058, ) CIVIL ACTION NO. 9:11-3327-MGL-BM
)
      Plaintiff, )
)
v. )
) **REPORT AND RECOMMENDATION**
L. Fuertez-Rosario, HSA-MLP; )
John J. LaManna, Warden; and )
G. Link, Physicians Assistant; )
)
      Defendants. )
_____)

This action has been filed by the Plaintiff, pro se, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] Plaintiff, an inmate with the Federal Bureau of Prisons (BOP), alleges violations of his constitutional rights by the named Defendants, all prison employees.

The Defendants filed a motion to dismiss or for summary judgment on April 16, 2012. As Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on April 23,

---

[1] In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 (1982). Harlow and progeny indicate that case law involving § 1983 claims is applicable in Bivens actions and *vice versa*. Farmer v. Brennan, 511 U.S. 825 (1994). See also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-444 (4th Cir. 1988); Osabutey v. Welch, 857 F.2d 220, 221-223 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).

- 1 -



2012, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

After receiving an extension of time, Plaintiff filed a response in opposition to the Defendants' motion on June 26, 2012. The Defendants' motion is now before the Court for disposition.[2]

### Background and Evidence

Plaintiff alleges in his Verified Complaint[3] that he suffered a torn Achilles tendon (apparently while housed at FCI Edgefield in South Carolina). Plaintiff alleges that the Defendant Link was "initially" the physician on duty, and recommended Plaintiff for kitchen work detail on or about December 7, 2007. Plaintiff alleges he continued to complain to the Defendants Fuertes-Rosario and LaManna (Warden of the Institution), and that "after one half of a year of pain and suffering upon traumatic injury and being forced to continue to go repeatedly back and forth to job assignment and deal with continuous delays relief was finally granted from persistent administrative maneuvers." Plaintiff alleges that his constitutional rights were violated by the Defendants and seeks unspecified "financial compensation". See generally, Verified Complaint.

Plaintiff has attached as exhibits to his Complaint an "Attempt at Informal

---

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion to dismiss or for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[3] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



Resolution" form from November 2010, and a "Request for Administrative Remedy" form dated December 23, 2010. See Exhibits.

In support of summary judgment in the case, the Defendant Glenn Link has submitted an affidavit wherein he attests that during the time period at issue[4] he was a Certified Physician's Assistant at FCI Edgefield. Link attests that his duties included providing patient care to inmates, and that he worked with physicians and other medical providers to provide this service. Link attests that he is not familiar with the Plaintiff, but that prison records reflect that he saw the Plaintiff during his initial intake screening at FCI Edgefield on December 6, 2007. Link attests that when an inmate is being admitted to a facility, he is seen by a medical provider who reviews the in-transit paperwork and speaks with the inmate to determine if he has any immediate medical needs. If the inmate arrives with medication, the provider ensures he continues to receive his medications, and if the inmate requires assistance devices or special accommodations for medical reasons, the provider ensures that appropriate steps are taken to obtain them. Link attests that each inmate is then scheduled for a more thorough assessment of their condition with a clinician within two weeks.

Link attests that when Plaintiff arrived at FCI Edgefield neither he, nor his in-transit paperwork, suggested he needed any type of medical care or that he had arrived with any medications or medical devices. Link attests that he interviewed Plaintiff about his past and current medical history, and that at no time did Plaintiff indicate he needed immediate medical care, medication, or a medical device because of his injury. Link attests that Plaintiff filled out the medical intake screening forms regarding his current and past medical history, and that on one of these forms he indicated he had a torn Achilles tendon. Link attests that he gave Plaintiff a temporary lower bunk

---

[4] Link attests that he retired in December 2010.


pass and "no" work restriction (meaning he could not work until he was more throughly evaluated by another medical provider) until he could be further evaluated. Link attests that, during his interview with the Plaintiff, there was no medical indication that Plaintiff needed immediate medical care, and that he was not thereafter involved in Plaintiff's medical care while Plaintiff was at FCI Edgefield.

Link further attests that, as a medical provider, he does not assign inmates to a particular work assignment. Rather, job assignments are assigned by the Unit Team. Link attests that, as a provider, he did have the authority to place a work restriction on an inmate if they had a health condition that prevented them from performing certain work, and that the prison records show that he gave Plaintiff a "no" work pass so that Plaintiff was excused from working until he was seen by another medical provider. Link attests that he never assigned Plaintiff to work in the food services department. Link further attests that Plaintiff's medical records show that he was provided effective and adequate medical care and treatment for his torn Achilles tendon. See generally, Link Affidavit.

The Defendant Luisa Fuertes-Rosario has submitted an affidavit wherein she attests that she is the Health Services Administrator (HSA) at FCI Edgefield, a position she has held for approximately ten years. Fuertes-Rosario attests that, in this position, she has oversight responsibility for the administrative operation of the Health Services Unit, including the medical records office, scheduling, ordering, and pharmacy hours, but that actual medical care is provided to inmates by the Clinical Director, Medical Officer, Mid-level Practitioner and other ancillary medical staff, and that she has no authority or duty to overrule the professional and informed decisions made by the physicians.



Fuertes-Rosario attests that she is a member of the Utilization Review Committee (URC) that reviews various requested consults and/or procedures, but that she does not have final authority on whether a consult is approved or denied. Fuertes-Rosario further attests that if a consult or procedure is approved by the URC, she ensures appropriate scheduling of appointments. She also addresses any concerns inmates may have about the medical care they are receiving by referring them to the appropriate medical care provider.

Fuertes-Rosario attests that she is familiar with the Plaintiff, but specifically denies Plaintiff's claim that he complained to her for several months about receiving a necessary surgical repair of torn ligaments in his heel. Fuertes-Rosario attests that Plaintiff's medical records show that she was not involved in providing direct medical care to the Plaintiff, that she advised Plaintiff of the status of his various requests or the means by which he could obtain medical care when he asked her questions regarding his treatment, and that any and all interactions she had with the Plaintiff were only in her role as HSA.

Fuertes-Rosario attests that Plaintiff's medical records show that in January 2008 the URC reviewed and approved Plaintiff's referral to an orthopedic specialist. After seeing the orthopedist on February 13, 2008, another referral was made on February 20, 2008, which was initially denied by the URC since Plaintiff had just seen the specialist one week earlier. However, after a followup examination by the Clinical Director on March 2008 indicated the conservative treatment recommended by the orthopedist was not working and that Plaintiff was experiencing pain and difficulty ambulating, a referral was made for surgical repair of Plaintiff's torn Achilles tendon. Fuertes-Rosario attests that the URC reviewed and approved this referral, and that Plaintiff's torn Achilles tendon was successfully repaired. Fuertes-Rosario attests that this surgical repair was



completed within seven months after Plaintiff arrived at FCI Edgefield. Fuertes-Rosario attests that she was not involved in the provision of patient care to the Plaintiff, and that in any event medical records show that Plaintiff was provided effective and adequate medical care and treatment for his torn Achilles tendon. See generally, Fuertes-Rosario Affidavit.

The Defendant John LaManna has submitted an affidavit wherein he attests that he was the warden at FCI Edgefield until December 31, 2008, when he retired. LaManna attests that, as warden, he had general oversight responsibility for the entire operation of FCI Edgefield and the satellite camp, but that he is not a physician, did not work in the medical field, and was not directly involved in the specific provision of medical care to inmates. Rather, he relied on the professional judgment of various medical professionals, including physicians, physician assistants, technicians, and the HSA.

LaManna attests that he is not familiar with the Plaintiff, and specifically denies Plaintiff's claim that he occasionally complained to LaManna about his torn Achilles tendon. LaManna attests that prison records reveal that he signed a response to an administrative grievance submitted by the Plaintiff on or about April 9, 2008 concerning medical care for his torn Achilles tendon. See LaManna's Affidavit, No. 5.[5] LaManna attests that, in this administrative remedy, Plaintiff complained about a delay in getting the surgery he stated he needed for his torn tendon, and that these allegations were investigated by medical staff who prepared a draft response for LaManna's consideration. Id. LaManna attests that he signed the response on May 2, 2008 informing Plaintiff that the surgery he was requesting had already been approved and that he was awaiting scheduling of such surgery. See LaManna's Affidavit, No. 6. LaManna attests that

---

[5]Although LaManna's Affidavit references attachments, none are attached to the file.



Plaintiff appealed his decision to the South East Regional Director (SRD). See LaManna's Affidavit, No. 5. LaManna attests that his decision was upheld by the SRD. Id., see also Defendants' Exhibit 12. LaManna attests that he never ignored Plaintiff's complaints regarding his medical care, and never acted with deliberate indifference to Plaintiff's medical needs. See generally, LaManna Affidavit.

The Defendants have also submitted an affidavit from Rex Blocker, the Clinical Director at FCI Edgefield. Dr. Blocker attests that he is familiar with the Plaintiff, who was an inmate at FCI Edgefield from December 6, 2007 to April 8, 2009.[6] Blocker attests that he has personally examined Plaintiff regarding his torn Achilles tendon, and presents a synopsis of the relevant part of Plaintiff's medical records.

Dr. Blocker attests that on August 21, 2007 Plaintiff was transferred to the BOP from the Mecklenburg County Jail, and that there was no indication on the in-transit form that Plaintiff had any type of current medical problems or required any medication. Dr. Blocker attests that on November 29, 2007, an MRI of Plaintiff's right ankle was completed at the Irwin County Hospital, which indicated a torn Achilles tendon, although there is no mention of when or how Plaintiff suffered this injury. Dr. Blocker attests, however, that the MRI result was not forwarded to FCI Edgefield until January 2008, after Plaintiff had arrived at FCI Edgefield on December 6, 2007. Dr. Blocker attests that Plaintiff was initially screened as part of the intake processing by the Defendant Link, and that after this initial screening each inmate is also scheduled for a more thorough assessment of his condition with a clinician within two weeks of his arrival.

---

[6]Plaintiff is presently confined at the Low Security Correctional Institution in Butner, North Carolina.



Dr. Blocker attests that when Plaintiff arrived at FCI Edgefield there was no indication in his in-transit paperwork that he needed any type of immediate medical care or that he was arriving with any medications or medical devices. Plaintiff also filled out medical intake screening forms regarding his current and past medical history, on one of which he indicated he had a torn Achilles tendon. The Defendant Link interviewed Plaintiff about his past and current medical history, and since Plaintiff indicated he had a torn Achilles tendon, Link gave Plaintiff a temporary lower bunk pass and "no" work restriction, meaning that he could not work until he was more thoroughly evaluated by another medical provider. Dr. Blocker attests that a more thorough medical assessment was then conducted by a clinician on December 12, 2007, at which time Plaintiff informed this provider that he had a torn Achilles tendon as a result of a sports injury he sustained in October 2007. Dr. Blocker attests that Plaintiff did not report any pain, so no pain medication was prescribed. Plaintiff was provided with a compression wrap and a soft shoe pass, continued on a "no" work restriction, and referred to the physician. Plaintiff was also directed to return to the clinic during sick call if he required care prior to his scheduled appointment.

Dr. Blocker attests that on December 21, 2007, an administrative note was made in Plaintiff's medical record indicating that he had been contacted by medical staff in regard to his torn Achilles tendon, and Dr. Blocker advised medical staff to inform Plaintiff that he [Blocker] would see Plaintiff for a followup visit and staff was advised to continue Plaintiff on a no work restriction. On December 27, 2007, Plaintiff was seen in medical complaining of difficulty walking, and he was provided with a crutch pending his appointment with a physician. Plaintiff was thereafter evaluated by a staff physician on January 3, 2008. Plaintiff advised the physician that he had injured his right foot while playing basketball at a County Detention Center in November 2007. Examination



revealed possible injury to the Achilles tendon, and x-rays were ordered, which were normal. Plaintiff was referred to see the consultant orthopedist, given a sedentary work only pass, a lower bunk pass, and a cane to assist in ambulation.

Dr. Blocker attests that he saw the Plaintiff on January 11, 2008 and reviewed the MRI results from the Irwin County Hospital that had been faxed to the institution a few days earlier. Dr. Blocker attests that he assessed Plaintiff with a torn Achilles tendon and reminded him he was pending a consult to see the orthopedic specialist. Dr. Blocker attests that he also gave Plaintiff a pass to wear athletic footwear. Dr. Blocker attests that he submitted the consultation for Plaintiff to see an orthopedist, which was reviewed and approved by the URC, and that Plaintiff was then seen by the orthopedist on February 13, 2008. The orthopedist noticed tenderness on the Achilles tendon, but no definitive palpable defect, and did not recommend immediate surgical repair. Instead, the orthopedist recommended conservative treatment, with possible surgical correction to be considered in the future if problems persisted. Dr. Blocker attests that although the staff physician prepared and submitted another orthopedic consultation request on February 20, 2008, it was denied since Plaintiff had just been seen by the consultant.

Dr. Blocker attests that he again saw the Plaintiff March 17, 2008 as a followup, at which time Plaintiff complained of continued pain and difficulty ambulating. Dr. Blocker attests that Plaintiff was referred back to the orthopedist for consideration of surgical correction, which was approved by the URC on March 21, 2008. Dr. Blocker attests that the orthopedist was asked to schedule non-emergency surgery, which he did for June 10, 2008. In the interim, Plaintiff was provided with assistive devises and a work prescription to limit his need to ambulate. Plaintiff thereafter underwent surgical repair of his Achilles tendon on June 10, 2008, and tolerated the



surgery well. Plaintiff's right foot and lower leg were placed in a rigid cast and he was issued appropriate medical restrictions to address his physical limitations. Plaintiff's stitches were removed on June 23, 2008, and he was thereafter monitored by medical at FCI Edgefield.

Dr. Blocker attests that Plaintiff's condition was re-evaluated by the treating orthopedic surgeon on August 13, 2008, and Plaintiff was provided instructions for self-completed physical therapy exercises to include heel lifts, toe lifts, and leg stretching. The surgeon told Plaintiff that the exercises would be his entire course of therapy and that outside therapy sessions were not necessary. Dr. Blocker attests that Plaintiff requested an extension of his medical convalescence restriction and crutches on September 15, 2008, at which time he exhibited appropriate active and passive range of motion capability and good gait ability. Dr. Blocker attests that compliance with self-completed exercise therapy was stressed to the Plaintiff, who verbally acknowledged he understood all the information discussed with him. Dr. Blocker attests that Plaintiff was not seen again for concerns related to his repaired Achilles tendon until January 6, 2009, at which time he reported that he was doing "alright" and displayed a regular and normal gait. Plaintiff was transferred to his current institution on April 21, 2009.

Dr. Blocker attests that Sentry records indicate that Plaintiff's first work assignment was in the inmate law library. Dr. Blocker attests that medical staff do not assign inmates to a particular work assignment; rather, the Unit Team is responsible for placement and work assignments. Dr. Blocker attests that medical staff can place restrictions on a specific inmate such as no work or sedentary work only, that the records show the Defendant Link placed a "no" work restriction on Plaintiff when he first arrived at FCI Edgefield, and that there is no record that shows Link assigned Plaintiff to work in the food services department. See generally, Blocker Affidavit.



In addition to these affidavits, the Defendants had also provided a copy of Plaintiff's sentence status (Defendants' Exhibit 1), his work detail history (Defendants' Exhibit 2), a copy of Plaintiff's transfer medical form from Mecklenburg County (Defendants' Exhibit 5), a copy of the Irwin County Hospital MRI Report (Defendants' Exhibit 7), a copy of Plaintiff's medical records (Defendants' Exhibit 8), a copy of the Bureau of Prison's Patient Care Program statement (Defendants' Exhibit 9) a copy of Plaintiff's surgery record from June 10, 2008 (Defendants' Exhibit10), copies of various health provider records from the BOP (Defendants' Exhibit 11),and a copy of Plaintiff's Administrative Remedy Regional Appeal from March 8, 2011 (Defendants' Exhibit 12).

As attachments to Plaintiff's response in opposition to the Defendants' motion,Plaintiff had submitted copies of his MRI Report and Findings from the Irwin County Hospital from November 30, 2007 (Plaintiff's Exhibits 1-3), a copy of his Intake Screening paperwork at FCI Edgefield (Plaintiff's Exhibit 4), a copy of a "medical status" form from FCI Edgefield dated January 3, 2008 where Plaintiff is restricted to sedentary work only (Plaintiff's Exhibit 5), a copy of a Consent to Release Medical Information (Plaintiff's Exhibit 6), a copy of a consultation sheet from the staff physician at FCI Edgefield dated January 1, 2008 (Plaintiff's Exhibit 7), a copy of the approval for Plaintiff's orthopedic consult by the UDC dated January 11, 2008 (Plaintiff's Exhibit 8), a copy of a medical duty form from December 2007 signed by the staff physician indicating Plaintiff could perform regular duty with no medical restrictions (Plaintiff's Exhibit 9), a copy of the disapproval by the UDC of an orthopedic medical consult request on March 7, 2008 (Plaintiff's Exhibit 10), and a copy of the UDC approval, and a copy of the accompanying UDC form (Plaintiff's Exhibit 11).



**Discussion**

Defendants have filed for summary judgment on Plaintiff's claim. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

In order to proceed with a Bivens claim for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975);



Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).  Plaintiff has failed to submit any such evidence. Rather, the evidence before this Court shows that Plaintiff received continuous and ongoing treatment for his Achilles tendon complaint.

The evidence shows that Plaintiff was initially evaluated at intake by the Defendant Link, who noted that Plaintiff indicated he had a torn Achilles tendon and gave Plaintiff a no work restriction as well as a temporary lower bunk pass.  Link Affidavit; see also Defendants' Exhibit 8 (Court Docket No. 17-8, p. 6).  While Plaintiff complains in his Complaint that Link approved him for kitchen work, the documentary evidence presented to this Court belies this assertion.  Indeed, Plaintiff does not even allege in his Complaint that he was ever required to work any kitchen work, he specifically argues in his response in opposition to the Defendants' motion for summary judgment that he refused to do any kitchen work, and the Defendants' Exhibit 2 (Plaintiff's Inmate Work Detail History) shows that Plaintiff never did any kitchen work.

During Plaintiff's subsequent full medical evaluation on December 7, 2007, Plaintiff was referred to see a physician and was advised that he could return to the medical clinic if he required any care prior to his scheduled appointment.  Blocker Affidavit; see also Defendants' Exhibit 8 (Court Docket No. 17-8, pp. 7-8).  Plaintiff thereafter did return to the medical clinic on December 21, 2007 and again on December 27, 2007.  Dr. Blocker was consulted, and he instructed that Plaintiff continue on his "no" work restriction and that he be provided with a crutch to assist in ambulation pending his appointment.  Blocker Affidavit; see also Defendants' Exhibit 8 (Court Docket No. 17-8, pp. 10-11).  Plaintiff was then seen and evaluated by a staff physician on January 3, 2008, x-rays were taken (which were normal), and he was referred to an orthopedist for evaluation.  Plaintiff was restricted at that time to sedentary work only.  Blocker Affidavit; see also



Defendants' Exhibit 8 (Court Docket No. 17-8, pp. 12-13).

Plaintiff was seen again by Dr. Blocker on January 11, 2008, and was thereafter seen by the orthopedist for an evaluation on February 13, 2008. The orthopedist found some irregularities to the tendon but no definitive palpable defect with pain, noted Plaintiff's MRI which showed a roughly four centimeter tear, and diagnosed Plaintiff with Achilles tendon tear, chronic. He recommended at that time that exploration with repair be considered if Plaintiff's condition "persists in being a problem". Defendants' Exhibit 8 (Court Docket No. 17-8, p. 21). Although a second request to see the orthopedist was then disapproved since it was dated only a week later, Dr. Blocker did refer Plaintiff back to the orthopedist on March 17, 2008 after Plaintiff continued to complain of pain. Id., at p. 23. This request was approved, and Plaintiff thereafter underwent non-emergency surgery on June 10, 2008, following which he continued to be monitored by medical staff.

Following an office visit on September 15, 2008, Plaintiff was not seen again for concerns related to his repaired Achilles tendon until January 6, 2009, at which time he reported he was doing alright and displayed a regular and normal gait. Blocker Affidavit; see also Defendants' Exhibit 8 (Court Docket No. 17-8, pp. 54-59). While Plaintiff's medical records reflect that he continued to have and be seen for various complaints, and in particular that he continued to object to having to do any work assignments, none of the information contained in Plaintiff's medical records supports Plaintiff's claim of constitutionally inadequate medical care, nor do Plaintiff's own exhibits provide support for such a claim. There is certainly no evidence that any of the three named Defendants were deliberately indifferent to Plaintiff's serious medical needs.

In addition to the voluminous medical records provided to the Court, the Defendants' have provided an affidavit from a licensed physician attesting to the extent, nature and quality of the



medical care Plaintiff received, and attesting that Plaintiff was provided effective and adequate medical care and treatment for his torn Achilles tendon. In contrast to this *medical evidence*, Plaintiff has presented no evidence to show that any named Defendant was deliberately indifferent to his medical needs. Plaintiff's own personal opinion that his care was inadequate is not sufficient to avoid summary judgment. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]). While Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and evidence which refute his claims. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health



or safety.'"], quoting <u>Farmer</u>, 511 U.S. at 837.  This case should therefore be dismissed.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 27, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

